Joseph P. Bass, Appellant, *vs.* City of Bangor.

Penobscot.    Opinion January 14, 1914.

*Appeal.    Assessment.    Benefit.    Betterments.    Description.    Land.*
*Proceedings.    Streets.    Tax.    Title.    Widening.*

1.  General acts are held not to repeal the provisions of charters granted to municipal corporations, though conflicting with the general provisions, unless the words of the general statute are so strong and imperative as to render it manifest that the intention of the Legislature cannot be otherwise satisfied.

2.  It must be presumed, in the absence of clear expression to the contrary, that the Legislature passed the general law with reference only to those to whom the general tax law before then was applicable, and not for the purpose of affecting corporations that had in their charters a specific provision for taxation.

3.  A general statute repealing all acts, or parts of acts contrary to its provisions, will not be held to repeal a clause in any municipal corporation upon the same subject matter.

4.  The general law on a subject matter, which has been provided for in certain localities by special laws, will not, although it contains a general repealer of acts inconsistent with it, annul or alter the special provisions in those localities.

5.  The test is whether a subsequent legislative act is so directly and positively repugnant to the former act that the two cannot consistently stand together.

6.  These proceedings to assess the benefits to the appellant, by reason of the widening of Central Street, were under the charter of the city of Bangor, and section 34 of chapter 23 of the Revised Statutes does not apply.

On report. · Case to stand for trial.

This is an appeal by the plaintiff from an assessment by the city council of the city of Bangor, of benefits upon land owned by plaintiff and situate at the corner of Hammond and Central Streets in the city of Bangor. The city council of Bangor, in accordance with the city charter, in the summer of 1911 widened Central Street and assessed said plaintiff in the sum of $4032.93 for benefits.

From which assessment the plaintiff appealed to the Supreme Judicial Court, then next to be holden at Bangor, in and for the County of Penobscot, on the first Tuesday of January, A. D. 1912, and filed therewith his reasons of appeal.

At the close of the hearing below, by agreement of the parties, the case was reported to the Law Court upon so much of the evidence as is legally admissible under these proceedings; in the event the proceedings of the Bangor city council relative hereto are sustained, the case to be sent back for further proceedings according to law.

The case is stated in the opinion.

*P. H. Gillin, and E. M. Simpson,* for appellant.

*Hugo Clark, J. F. Gould, and B. W. Blanchard,* for City of Bangor.

SITTING: SAVAGE, C. J., CORNISH, BIRD, HALEY, HANSON, PHIL-BROOK, JJ.

HALEY, J. The city of Bangor, acting in accordance with the city charter, on the 26th day of July, 1911, widened Central Street from the westerly line of Harlow Street to a point about one hundred feet northerly of Hammond Street, and awarded damages to the several persons mentioned in said proceedings in the sum of $41,000.

September 18, 1911, the city council, in accordance with the provisions of section 14 of the charter, apportioned a part of the damages allowed for the widening of said street upon certain lots or parcels of land adjacent to and bounded on said Central Street, which in the judgment of the city council were benefited by said widening, in the aggregate sum of $21,504.98, the city council being authorized by the charter to assess benefits to an amount not exceeding three-fourths of the damages allowed for such widening.

The appellant is the owner of land at the corner of Hammond and Central Streets, measuring on Central Street one hundred and twenty-one feet, and was assessed for the benefits received by said land the sum of $4032.93. Appellant seasonably appealed to the Supreme Judicial Court from the assessment of benefits, under the

provisions of section 16 of said charter, and set forth in his appeal ten specific reasons for the appeal. The appeal was duly entered, and at the October term, 1912, of the Supreme Judicial Court, the evidence was taken out, and the case reported to the Law Court with the following stipulation; "upon so much of the evidence as is legally admissible under these proceedings, in the event of the proceedings of the Bangor city council relative hereto are sustained, the case to be sent back for further proceedings according to law."

The appellant claims that sections 33 to 37, inclusive, of chapter 23, R. S., authorizing cities to assess land benefited by the widening of streets repealed so much of the charter of the city of Bangor as related to that subject, and that, as the proceedings taken by the city were not according to sections 33 to 37, inclusive, of chapter 23, but according to the city charter of the city of Bangor, the charter and the statute prescribing different methods of assessing the benefits, the proceedings are void.

If the provisions of the charter were repealed by sections 33 to 37, inclusive, of chapter 23, R. S., the city council had no right to levy the assessment in question, as notice was given to the land owners whose land was adjacent and benefited by the widening of the street, according to the provisions of the city charter, and not as required by the statute, and an assessment upon land for benefits received by the widening of a street cannot be levied unless the notice prescribed by law is given, and the important question in this case is, were the provisions of the charter of the city of Bangor relative to assessments for benefits received by the widening of streets, repealed by the enactment of sections 33, 34, 35, 36 and 37 of chapter 23, R. S.?

The provisions of chapter 23, giving cities the right to levy assessments upon lands benefited by the widening of streets, which the appellant claims repealed the provisions of the charter of the city of Bangor upon the same subject, were enacted by the Legislature of 1872, chapter 26, at which time the charter of the city of Bangor upon that subject was the same as now, the charter having been granted by the Legislature of 1834. It was said in *State* v. *Donovan,* 89 Maine, 448, that "general acts are held not to repeal the provisions of charters granted to municipal corporations though

conflicting with the general provisions, unless the words of the general statute are so strong and imperative as to render it manifest that the intention of the Legislature cannot be otherwise satisfied."

The rule as stated is sustained, not only by the authorities cited in the opinion, but by many others.

In *Sheridan* v. *Stevenson,* N. J. L., 371, which was a petition for mandamus against the tax collector to compel him to pay over taxes collected by him which he claimed by the general law he was not obliged to pay over until December, while the special law that applied to the city of which he was collector stated October, the court says:

"The well settled law in this state is, that the provision of a special charter shall not be altered or repealed except by express words. . . .

"It must be presumed, in the absence of clear expression to the contrary, that the Legislature passed the general law with reference only to those to whom the general tax law before then was applicable, and not for the purpose of affecting corporations that had in their charter a specific provision for taxation. *Railroad Co.* v. *Commissioners of Taxation,* 38 N. J. L., 422.

"A general statute repealing all acts or parts of acts contrary to its provisions, will not be held to repeal a clause in any municipal corporation upon the same subject matter. This has been the language of our court since *State* v. *Brannen,* 3 Zab., 484. The repealing clause must be so expressed as to manifest the legislative intention to include all acts, whether special or local or otherwise, inconsistent with the provision of the act. *Bank* v. *Bridges,* 1 Vroom, 112. . . . The change of a city charter must be made by express words or by necessary implication. *State Gorum* v. *Mills,* 5 Vroom, 177."

"It has been well settled in this state that a general law on a subject matter, which has been provided for in certain localities by special laws, will not, although it contains a general repealer of acts inconsistent with it, annul or alter the special provisions in those localities. *State* v. *Brannen,* 3 Zab., 484; *State* v. *Clark,* 1 Dutcher, 54; *Mayor* v. *Freeholders,* 11 Vroom, 595; *Brown* v. *Mullica Township,* 48 N. J. L., 477."

In *Roosevelt* v. *Supervisor,* 40 Hun., 353, the Legislature author-
ized "every town" in the state by vote, to raise an additional amount
of $750 for the improvement of roads and bridges beyond the $500
allowed to be raised for that purpose by the general law, and the
court *held,* that act did not repeal the special law conferring upon
Pelham unlimited power to vote money for that purpose saying,
"the words 'every town' can operate on every town where there is
no local law. . . . the two acts can be operated harmoniously
at the same time—the local one in its locality and the general one
elsewhere."

In *Higgins* v. *Bell,* 53 Hun., 632, 6 N. Y. Suppl., 105, the court
say: "The act of 1873 was a special local act, forming a system of
government for Brooklyn. By well settled principles the general
act of 1874 would not effect a repeal of the special act."

*People* v. *Munroe County Co.,* 93 N. Y. Suppl., 452, lays down
the same doctrine and quotes from *People* v. *Keller,* 157 N. Y., 97:
"Being a special and local law, how could the charter of the city of
New York be repealed, or altered, by a subsequent general statute,
unless such an intent to repeal, or alter was manifest? When a
local and special statute covers the entire ground and constitutes a
completed system of provisions and regulations, which the general
statute, if allowed to operate, would alter, the settled rule is that
it is not to be deemed repealed, except the intent to repeal is clearly
manifested.

"The test is whether a subsequent legislative act is so directly and
positively repugnant to the former act that the two cannot consist-
ently stand together. Is the repugnancy so great that the legislative
intent to amend or repeal is evident?" *Starbird* v. *Brown,* 84 Maine,
238; *Jumper* v. *Moore,* 110 Maine, 159; *State* v. *Cleland,* 68 Maine,
258.

It must be regarded as settled law, that charters or parts of
charters of cities are not repealed by a general law if the two can
consistently stand together, unless the intention of the Legislature
to repeal the charter or parts of charter is clear and plain. In this
case there is nothing inconsistent in holding the provisions of the
charter of the city of Bangor, relating to assessments for benefits
to the land benefited by the widening of a street, not inconsistent
with the general law passed upon that subject in 1872, and there-

fore the city government of the city of Bangor was authorized by the terms of the charter to make assessments in proper cases as specified in the charter.

It is admitted that the proceedings by the city of Bangor were according to the provisions of its charter; but ten reasons are urged why the proceedings are void, that is, the petitioner has appealed from the assessment of benefits claimed to have been received by lots or parcels of land owned by him in the city of Bangor, and urges ten reasons why the court should not take cognizance of the case. Section 16 of the charter of the city of Bangor provides: "the said party appealing shall enter his said appeal in said court, and produce certified copies of the proceedings of said city council, which copies said city clerk shall furnish upon demand, within a reasonable time, upon being paid, or having tendered to him a reasonable compensation for making and certifying the same. And the said court shall take cognizance of such case, and if, upon examination of said copies, it shall appear that the proceedings of said city council have been regular and according to the provisions of this act, then said court shall proceed to try and determine, by jury, or otherwise if the parties agree to any other mode, the question whether the said appellant, or his said lot or parcel, ought in justice to be assessed, pursuant to this act and the spirit and intent thereof, and, if so, in what sum."

The first reason urged is, "Because the land assessed is not sufficiently described to enable the boundaries to be determined with proper certainty, or to inform the appellant how many parcels of land are included in said assessment."

From an inspection of the copies, the description of the land assessed is sufficiently accurate to pass the title to the same if used in a deed, and there is nothing in the copies in regard to how many parcels of land are included in the assessment. From an inspection there is but one parcel, even if it was necessary that different parcels, if they were different parcels, should be specified in the assessment. The court in deciding whether to take and retain cognizance of and try the appeal can only look to the copies, and there is nothing in the copies to sustain the first contention.

The second reason is, because the assessment was in a lump sum on a single lot or parcel of land, and the appellant claims that it

consisted of three or more separate and distinct parcels, held by him under distinct titles, as appears by the deeds duly recorded in the Registry of Deeds, and that the different lots, if they were benefited by the assessment, were benefited in different degrees by the widening of the street.

The facts alleged in the second reason do not appear in the copies, therefore the second reason urged is invalid.

The third reason urged is, in substance, that there is included in the assessment of one single lot, or parcel a distinct parcel owned by Ara Warren, of Bangor, and that said Warren was in possession of said parcel.

If it be a fact the court cannot tell it from an inspection of the copies, therefore the reason alleged is invalid.

The fourth reason alleged is, because no notice of said assessment was given to said Ara Warren, as required by law.

Again, it is sufficient to say that if notice was required the record is silent upon the ownership of Ara Warren, and an inspection of the copies does not disclose any reason why notice should have been given to him, therefore the fourth reason alleged is invalid.

The fifth reason urged is, because notice of the assessment was not given to the appellant, as required by the Revised Statutes, chapter 23, section 34.

As the proceedings to assess the benefits were under the charter of the city, and as section 34 of chapter 23, R. S., does not apply to the case as we have above held, the fifth reason alleged is invalid.

The sixth reason urged is, because said street was not widened in front of the premises assessed to the appellant for a distance of one hundred feet, whereby said premises instead of being benefited were damaged.

This only goes to the amount of benefits received by the land, and the appeal was taken to try that question, and it would be a curious rule of law that would allow a party appealing from the assessment of damages for the laying out of a highway, or assessment for benefits received by land by reason of the laying out or changing of a highway, to claim that he had been assessed in a larger sum than he ought to have been, and urge that as a reason why the original proceedings should be dismissed. The appeal is for the purpose of trying that question, therefore the sixth reason alleged is invalid.

The seventh reason urged is, because said assessment is excessive and greater than the benefits accrued to the land, or parcels of land, so assessed to the appellant, and the eighth reason urged is, because no benefit whatever has accrued from and by the widening of said street to the premises assessed to the appellant.

Both of these reasons set forth the claims that the appellant may urge to the jury upon the trial of his appeal, that being the purpose of the appeal, and do not appear upon an inspection of the copies, therefore the seventh and eighth reasons as alleged are invalid.

The ninth reason urged is, that no assessment was made on the westerly side of Central Street, that the sum allowed the Stetson and Strickland heirs were not damages but the purchase price, and that no assessment was made against the property covered by brick stores on the westerly side of Central Street owned by said Stetson and Strickland heirs.

Section 14 of the city charter provides: "It shall be lawful for the said city council to apportion the damages so estimated and allowed, or such parts thereof as to them seems just, upon the lots or parcels of land adjacent to and bounded upon such street or way, and not those lands for which damages are assessed." Damages were allowed to the Stetson and Strickland heirs in the sum of $27,000, and therefore no benefit should have been assessed upon their land. and it does not appear from an inspection of the record that the $27,000 was the purchase price of the land and not for actual damages. Therefore the ninth reason is invalid.

The tenth reason urged is, because no deduction or set-off for benefits caused the lots or parcels of land on the side of said street that was widened was made in assessing damages caused by the taking therefrom of land necessary to said widening, whereby the whole cost of the widening of said street has been assessed upon the land on the opposite or westerly side of said street, and the land of the appellant has thereby been assessed for more than its proportional share of the three-quarters part of said costs allowed by section 14 of the city charter.

None of the matters set forth in the tenth reason appear from an inspection of the copies, and they are proper matters to be urged to a jury who may try the appeal and assess the benefits to the appellant's land, if any.

An examination of the copies of the proceedings of the city council shows the proceedings to have been regular and according to the provisions of the charter, and the appellant having appealed from the assessment of benefits, as authorized by the charter, the court should proceed to try and determine, "whether the said appellant or his said lot or parcel ought in justice to be assessed pursuant to the act and the spirit and intent of the city charter, and if so, in what sum?" The assessment of the tax in this case was the same as any other assessment of taxes, by authority of the Legislature the sovereign power, performed by the city government as agent of the state, and no appeal lies from the assessment, except as given by statute. An appeal from the assessment of taxes is a privilege granted by the power that has the authority to assess the tax, and that power may limit the right of appeal as it sees fit, except as restrained by the constitution. The right being purely statutory, can extend no further than the statute provides. *Hayford* v. *Bangor,* 103 Maine, 434.

In this case, it has seen fit to limit the appeal to the question of whether said appellant or his said lots or parcels ought in justice to be assessed pursuant to the act authorizing the assessment and the spirit and intent thereof, and if so, in what sums? Undoubtedly the court, if the appellant desires, will frame the issues so that if the appellant's land claimed to have been benefited by the widening of the street, consists of more than one parcel or lot, that benefits received by each lot, if any, may be separately assessed according to the benefits received by each lot or parcel; but the validity of the proceedings in making the assessment appearing regular from an inspection of the copies, the court should take cognizance of the appeal and proceed to trial of the issues open upon appeal, as provided by section 16 of the charter of the city of Bangor.

*Case to stand for trial.*